**Opinion issued June 26, 2014**



In The

# Court of Appeals
### For The
# First District of Texas

———————————————

**NO. 01-13-00629-CV**

———————————————

## IN THE INTEREST OF J.K.B. AND J.D.B., MINOR CHILDREN

———————————————

### On Appeal from the 246th District Court
### Harris County, Texas
### Trial Court Case No. 2011-77322

———————————————

### O P I N I O N

Roy[1] filed suit to terminate the parent-child relationship between him and

J.K.B. and J.D.B., pursuant to Texas Family Code section 161.005. *See* TEX. FAM.

CODE ANN. § 161.005 (Vernon 2014). The statute permits a man to terminate the

parent-child relationship with a child if he satisfies certain statutory criteria

---

[1] We refer to the parties involved by either first names only or initials to protect the identities of the minor children. *See* TEX. FAM. CODE ANN. § 109.002(d) (Vernon 2014); TEX. R. APP. P. 9.8.

entitling him to court-ordered genetic testing and the result of the testing excludes him from being the child's genetic father. *See id.* The trial court determined that Roy did not meet certain statutory criteria entitling him to genetic testing under section 161.005. The trial court signed an order denying Roy's request for genetic testing and his request for termination of the parent-child relationship between him and J.K.B. and J.D.B.

We reverse and remand.

## Background

### A. Statutory History: Family Code Section 161.005

In 1973, the Texas Legislature enacted Family Code section 15.01, which allowed a parent to seek voluntary termination of his or her parental rights to a child.[2] The provision read, "[A] parent may file a petition requesting termination of the parent-child relationship with his child. The petition may be granted if the court finds that termination is in the best interest of the child."[3] In 1995, the

---

[2] Act of May 24, 1973, 63rd Leg., R.S., ch. 543, § 1, sec. 15.01, 1973 Tex. Gen. Laws 1411, 1426, *repealed by* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex. Gen. Laws 113, 282 (current version at TEX. FAM. CODE ANN. § 161.005(a) (Vernon 2014)).

[3] *Id.*

Legislature repealed section 15.01 and re-codified it as Family Code section 161.005.[4]

The statute was "rarely used," but when employed, it was most commonly used "when [a] birth mother want[ed] to place her baby for adoption." *In re T.S.S.*, 61 S.W.3d 481, 483 & 483 n.1 (Tex. App.—San Antonio 2001, pet. denied) (citing Robinson C. Ramsey, *Termination of Parental Rights*, 4 Texas Family Law Service, § 33.8 (6th ed. 1997)). There were, however, reported cases in which a father asserted, pursuant to section 161.005, that termination of his parental rights was in the child's best interest.

In one such case, *T.S.S.*, a father, responding to a threatened increase in child support, sought to terminate the parent-child relationship under section 161.005, asserting that termination was in the child's best interest. *See T.S.S.*, 61 S.W.3d at 483. The sole basis for the father's assertion was his claim that he was not the biological father. *See id.* at 488. The *T.S.S.* court determined that paternity had been adjudicated in an earlier divorce proceeding, as indicated by the language in the divorce decree. *See id.* at 486. The court held that the father was barred by collateral estoppel from re-litigating the paternity issue and affirmed the trial court's denial of the termination request. *Id.* at 486, 488.

---

[4] Act of April 6, 1995, 74th Leg., R.S., ch. 20, §§ 1, 2, 1995 Tex. Gen. Laws 113, 282 (amended 2011, 2013).

3

In 2011, the Legislature amended Family Code section 161.005, substantially revising and expanding its provisions.[5] Under the amended statute, a mother or father could still seek to terminate the parent-child relationship based on best interest of the child.[6] However, the 2011 amendments added provisions to the statute giving a father a means to terminate the parent-child relationship when paternity is in question.[7] These added provisions include the following:

§ 161.005. Termination When Parent Is Petitioner

. . . .

(c) [A] man may file a suit for termination of the parent-child relationship between the man and a child if, without obtaining genetic testing, the man signed an acknowledgment of paternity of the child in accordance with Subchapter D, Chapter 160, or was adjudicated to be the father of the child in a previous proceeding under this title in which genetic testing did not occur. The petition must be verified and must allege facts showing that the petitioner:

(1) is not the child's genetic father; and

(2) signed the acknowledgment of paternity or failed to contest parentage in the previous proceeding because of the mistaken belief, at the time the acknowledgment was signed or on the date the court order in the previous proceeding was rendered, that he was the child's genetic

---

[5]  Act of Apr. 14, 2011, 82nd Leg., R.S., ch. 54, § 2, sec. 161.005, 2011 Tex. Gen. Laws 86, 87–88.

[6]  Act of Apr. 14, 2011, 82nd Leg., R.S., ch. 54, § 2, sec. 161.005(a), 2011 Tex. Gen. Laws 86, 87–88.

[7]  Act of Apr. 14, 2011, 82nd Leg., R.S., ch. 54, § 2, sec. 161.005(c)–(o), 2011 Tex. Gen. Laws 86, 87–88.

father based on misrepresentations that led him to that conclusion.

. . . .

(e) A petition under Subsection (c) must be filed not later than the second anniversary of the date on which the petitioner becomes aware of the facts alleged in the petition indicating that the petitioner is not the child's genetic father.

(e-1) Subsection (e) applies beginning September 1, 2012. Before that date, a petition may be filed under Subsection (c) regardless of the date on which the petitioner became aware of the facts alleged in the petition indicating that the petitioner is not the child's genetic father. This subsection expires September 1, 2013.

(f) In a proceeding initiated under Subsection (c), the court shall hold a pretrial hearing to determine whether the petitioner has established a meritorious prima facie case for termination of the parent-child relationship. If a meritorious prima facie claim is established, the court shall order the petitioner and the child to submit to genetic testing under Sub-chapter F, Chapter 160.

(g) If the results of genetic testing ordered under Subsection (f) identify the petitioner as the child's genetic father under the standards prescribed by Section 160.505 and the results of any further testing requested by the petitioner and ordered by the court under Subchapter F, Chapter 160, do not exclude the petitioner as the child's genetic father, the court shall deny the petitioner's request for termination of the parent-child relationship.

(h) If the results of genetic testing ordered under Subsection (f) exclude the petitioner as the child's genetic father, the court shall render an order terminating the parent-child relationship.

TEX. FAM. CODE ANN. §§ 161.005(c)-(h) (Vernon 2014).

The text of the statute plainly provides a method for an acknowledged or adjudicated father to challenge paternity through genetic testing. The legislative history confirms this plain reading.

In the bill analysis for the 2011 amendment, the Senate Research Committee recognized that, although section 161.005 provided that a parent may file a suit to terminate the parent-child relationship, and a court may order termination if it is in the child's best interest, the statute contained no provisions "dealing with situations in which a father has mistakenly signed an acknowledgment of paternity or has been adjudicated as the father of a child." SENATE RESEARCH CTR., BILL ANALYSIS, TEX. S.B. 785, 82nd Leg., R.S. (2011). The committee observed, "The father would be required to continue paying child support even if genetic testing proved that he could not be the father of the child." *Id.* The analysis indicates that the purpose of the 2011 amendment was to provide "a way for a man who has either signed an acknowledgement of paternity or is adjudicated to be the father of a child without obtaining genetic testing to have the parent-child relationship terminated." *Id.*

## B. Facts and Procedural History

Roy married Mona in 1987. During the marriage, Mona gave birth to twins, J.K.B. and J.D.B on July 12, 1999. At that time, the couple already had three other children.

Roy and Mona divorced in 2002. On September 25, 2002, the trial court signed an "Agreed Final Divorce Decree and Order Affecting the Parent-Child Relationship." In that judgment, the trial court found that Roy and Mona "are the parents of" J.K.B. and J.D.B. and of their three siblings. Roy and Mona were appointed joint managing conservators of the five children, with Mona having the right of primary possession. Roy was ordered to pay child support for the children, which he has paid through the years.

On December 28, 2011, Roy filed a verified petition to terminate the parent-child relationship between him and the twins pursuant to Family Code section 161.005(c).[8] Pleading the statutory elements of his section 161.005 claim, Roy alleged as follows: (1) he had been adjudicated to be the twins' father in the 2002 judgment from the divorce proceeding; (2) genetic testing had not occurred in that proceeding; (3) he had not contested parentage in the divorce proceeding because of his mistaken belief at that time he was the twins' father; and (4) his mistaken belief was based on misrepresentations that had been made to him. Roy asserted that, after the divorce, he had undergone genetic testing, which excluded him as the twins' father. Roy attached the genetic testing report to his petition, which showed

---

[8]     Relevant to this appeal, a petition may be filed under subsection (c) regardless of the date on which the petitioner became aware of the facts alleged in the petition, provided the petition was filed after May 12, 2011 but before September 1, 2012. TEX. FAM. CODE ANN. §§ 161.005 (e–1). Here, Roy filed his petition, within this time period, on December 28, 2011.

7

that the testing had been done in September 2003 and had excluded Roy as the twins' biological father.

The trial court conducted pre-trial hearings on Roy's termination request. Roy claimed, as he had in his petition, that he had been adjudicated to be the twins' father in the 2002 divorce proceeding. Asserting that he had made a prima facie showing under section 161.005, Roy requested the trial court to order genetic testing and ultimately to order termination of the parent-child relationship.

The trial court disagreed that Roy had been adjudicated to be the twins' father in the divorce proceeding. Rather than an adjudicated father, the court stated that Roy was the twins' presumed father, as defined in the Family Code. The court further stated that subsection 161.005(c) did not entitle a presumed father to petition for termination under section 161.005. The trial court pointed out that, under the Family Code, a presumed father must seek to challenge paternity within four years of the birth of the child, which Roy had not done.[9]

---

[9] Family Code section 160.607 provides that when a child has a presumed father, a proceeding to adjudicate parentage "shall be commenced not later than the fourth anniversary of the date of the birth of the child." TEX. FAM. CODE ANN. § 160.607(a) (Vernon 2014). However, there are exceptions to this requirement. As amended in 2011, section 160.607 provides,

> (b) A proceeding seeking to disprove the father-child relationship between a child and the child's presumed father may be maintained at any time if the court determines that:

Having concluded that he was not an adjudicated father as alleged in his petition, the trial court denied Roy's request for genetic testing and his request for termination of the parent-child relationship. On July 5, 2013, the trial court signed an order, which provided as follows:

> The Court finds that Petitioner [Roy] is the presumed father, married to the mother of the children born during the marriage of the parents and, therefore, is not an acknowledged father nor an adjudicated father under Texas Family Code §161.005(c). Therefore, request for DNA testing is denied and termination is denied.

At Roy's request, the trial court filed findings of fact and conclusions of law, which provided as follows:

### FINDINGS OF FACT

1. On or about December 28, 2011, Roy . . . sought to have his parentage terminated.

2. Roy . . . was married to the mother of the children at the time of the conception and birth of the children.

---

> (1) the presumed father and the mother of the child did not live together or engage in sexual intercourse with each other during the probable time of conception; or
>
> (2) the presumed father was precluded from commencing a proceeding to adjudicate the parentage of the child before the expiration of the time prescribed by Subsection (a) because of the mistaken belief that he was the child's biological father based on misrepresentations that led him to that conclusion.

*Id.* § 160.607(b).

9

3. Roy . . . was not an acknowledged father under Texas Family Code 161.005(c).

4. Roy . . . was not an adjudicated father under Texas Family Code 161.005(c).

5. Roy . . . failed to make a prima-facie showing under 161.005(f).

6. Roy . . . failed to show that the termination would be in the best interest of the children.

7. Any Conclusion of Law that should be a Finding of Fact is adopted here as a Finding of Fact.

CONCLUSIONS OF LAW

1. The Court has jurisdiction of all the parties and the subject matter of the suit.

2. Roy . . . was not entitled to the relief requested.

2A. A presumed father is not an adjudicated father nor is he an acknowledged father under the statute.

3. Any Conclusion of Law that should be a Finding of fact is adopted here as a Finding of Fact.

Roy now appeals the trial court's judgment, identifying three issues.[10]

**Adjudicated to Be the Twins' Father**

In his first issue, Roy asserts that the trial court incorrectly determined that he was not an adjudicated father for purposes of subsection 161.005(c), as Roy had alleged in his petition. The material facts underlying whether Roy is an adjudicated father for purposes of subsection 161.005(c) are undisputed. The

---

[10]     Mona has not filed an appellee's brief.

10

resolution of this issue turns on the application of statutory language to those undisputed facts. We review questions of statutory construction de novo. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). Our fundamental objective in interpreting a statute is "to determine and give effect to the Legislature's intent." *Am. Zurich Ins. Co. v. Samudio*, 370 S.W.3d 363, 368 (Tex. 2012). "The plain language of a statute is the surest guide to the Legislature's intent." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012).

When statutory text is clear, it is determinative of legislative intent, unless enforcing the plain meaning of the statute's words would produce an absurd result. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). The words of the statute cannot be examined in isolation, but must be construed based on the context in which they are used. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011).

Roy asserts that, for purposes of Family Code subsection 161.005(c), he was adjudicated to be the twins' father in the 2002 divorce proceeding. Roy points to the language in the December 2002 judgment from that proceeding in which the court expressly found Mona and Roy "are the parents of" J.K.B. and J.D.B.

Pursuant to subsection 161.005(c), "[A] man may file a suit for termination of the parent-child relationship between the man and a child if, without obtaining genetic testing, the man . . . was adjudicated to be the father of the child in a

11

previous proceeding under this title in which genetic testing did not occur."  TEX. FAM. CODE ANN. § 161.005(c).  The phrase "under this title" refers to Family Code Title 5, entitled, "The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship."  Title 5 contains Family Code chapters 101 through 266, which address generally parent-child relationships and suits affecting the parent-child relationship.  *See id.* §§ 101.001–266.011 (Vernon 2014).

Matters of conservatorship, possession, and support are matters adjudicated as a suit affecting the parent-child relationship under Title 5.  *See* TEX. FAM. CODE ANN. § 101.032 (Vernon 2014) (defining suit affecting the parent-child relationship); *see also id.* §§ 153.001–.709 (Vernon 2014) (governing matters of conservatorship and possession of minor children); *id.* §§ 154.002–.309 (Vernon 2014) (governing child support issues).  This Court has previously recognized that a suit for divorce in which the parties are parents of minor children necessarily includes a suit affecting the parent-child relationship.  *Neal v. Kuniansky*, No. 01–05–00368–CV, 2006 WL 1493735, at *3 n.2 (Tex. App.—Houston [1st Dist.] June 1, 2006, no pet.) (citing *Capellen v. Capellen*, 888 S.W.2d 539, 545 (Tex. App.—El Paso 1994, writ denied)).

As indicated by the December 2002 judgment, issues affecting the parent-child relationship, governed by Title 5, were resolved in the 2002 divorce proceeding.  Specifically, the judgment—under the heading, "Orders Affecting the

Parent-Child Relationship"—appointed Mona and Roy as the children's joint managing conservators, gave Mona primary possession, set out a standard visitation and possession schedule, and ordered Roy to pay child support for the five children born during Roy and Mona's marriage, including J.K.B. and J.D.B.  It was within the context of that proceeding and in conjunction with resolving the issues affecting the parent-child relationship that the trial court expressly found in the judgment that Roy was the parent of J.K.B. and J.D.B.

As Roy points out, courts have held that a man has been adjudicated to be the father of a child when a court finds in a divorce judgment that the man is the parent of the child as part of the court's resolution of issues affecting the parent-child relationship in the divorce proceeding.  *See, e.g., Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993); *T.S.S.*, 61 S.W.3d at 485; *In re A.L.J.*, 929 S.W.2d 467, 470-71 (Tex. App.—Tyler 1996, writ denied); *Espree v. Guillory*, 753 S.W.2d 722, 724 (Tex. App.—Houston [1st Dist.] 1988, no writ).  Given that, in the 2002 judgment, the trial court expressly found Roy to be the parent of the twins, appointed him the twins' joint managing conservator, and ordered him to pay child support, we conclude that Roy was adjudicated to be the father of J.K.B. and J.D.B. in a proceeding under Title 5 of the Family Code.  *See* TEX. FAM. CODE ANN. § 161.005(c).

13

We also agree with Roy that his status as a presumed father at the time of the divorce proceeding has no bearing on whether he was adjudicated to be the father of the twins during that proceeding.[11]  It is instructive that the Legislature has recognized that an adjudication of parentage can occur in the context of a divorce proceeding.  Subsection (c) of Family Code section 160.637, entitled, "Binding Effect of Determination of Parentage," provides as follows:

> In a proceeding to dissolve a marriage, the court is considered to have made an adjudication of the parentage of a child if . . . the final order: (1) expressly identifies the child as 'a child of the marriage' or 'issue of the marriage' or uses similar words indicating that the husband is the father of the child; or (2) provides for the payment of child support for the child by the husband unless paternity is specifically disclaimed in the order.

TEX. FAM. CODE ANN. § 160.637(c) (Vernon 2014).  The Legislature made no exception for presumed fathers from this provision; nor did the Legislature preclude presumed fathers from filing a petition to terminate the parent-child relationship under Family Code subsection 161.005(c).  *See id.*; *see also* TEX. FAM. CODE ANN. § 161.005.

---

[11]  A presumption of paternity exists if a man is married to the mother of the child and the child is born during the marriage.  TEX. FAM. CODE ANN. § 160.204(a)(1) (Vernon 2014).  This presumption legally establishes the father-child relationship between the man and child.  TEX. FAM. CODE ANN. § 160.201(b)(1).  By operation of law, a "presumed father" is "recognized as the father of the child until that status is rebutted or confirmed in a judicial proceeding."  TEX. FAM. CODE ANN. § 160.102(13).  Roy does not dispute that he was the twins' presumed father; rather, he asserts that he was adjudicated to be their father in the 2002 judgment from the divorce proceeding.

We hold that Roy was an adjudicated father for purposes of filing a petition to terminate the parent-child relationship pursuant to Family Code subsection 161.005(c). We further hold that the trial court erred when it denied Roy's request for genetic testing and request for termination based on its determination that he was not an adjudicated father as contemplated by subsection 161.005(c).

We sustain Roy's first issue.

## Prima Facie Case

In his second issue, Roy asserts that the trial court erred when it determined that he had not presented a prima case pursuant to Family Code subsection 161.005(f). Subsection (f) requires a trial court to hold a pre-trial hearing to determine whether the father has established a "meritorious prima facie case for termination of the parent-child relationship." *Id.* § 161.005(f). As part of that prima facie case, Roy was required to show that he failed to contest parentage in the divorce proceeding because of the mistaken belief—on the date the court order in the previous proceeding was rendered—that he was the twins' genetic father based on misrepresentations that led him to that conclusion. *See id.* § 161.005(c).

If a trial court finds that the man has established a prima facie case for termination, the trial court shall order the petitioner and child to submit to genetic testing. *Id.* § 161.005(f). Because a determination of whether a party has presented prima facie proof of a meritorious claim is a question of law, we review

15

the trial court's decision of this issue de novo. *In re C.E.*, 391 S.W.3d 200, 203 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Prima facie evidence is "merely that which suffices for the proof of a particular fact until contradicted and overcome by other evidence." *Id.* (citing *Dodson v. Watson*, 220 S.W. 771, 772 (Tex. 1920)). The prima facie standard requires only the minimum quantum of evidence necessary to support a rational inference that the alleged fact is true. *Id.* (citing *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004)). To make a prima facie case for genetic testing, Roy had to present evidence sufficient to support an inference that a misrepresentation caused him to believe that he was the twins' biological father. *See id.*; *see also* TEX. FAM. CODE ANN. § 161.005(c), (f).

Roy's petition tracked the statutory language, alleging that he did not contest paternity in the divorce proceeding because of his mistaken belief at that time that he was the twins' genetic father "based on misrepresentations that led him to that conclusion." His petition was supported by his sworn statement that the facts alleged in the petition "are true and correct." Mona did not answer the petition. To the contrary, at the pre-trial hearing, she affirmatively stated that she did not contest the termination request.

In addition, Roy offered the lab reports from the genetic testing completed in September 2003, nearly one year after rendition of the judgment in the divorce

16

proceeding adjudicating Roy as the twins' father. The reports reflect that Roy is excluded from being the twins' genetic father. Roy stated at the pre-trial hearing that he paid for the testing, which was after the divorce proceeding. Mona also stated at the hearing that they had not learned until "later on" that Roy was not the twins' biological father.

We conclude that Roy's uncontested verified petition alleging that a misrepresentation caused Roy to believe that he was the twins' biological father coupled with circumstantial evidence that a misrepresentation as to paternity was made constitutes a prima facie case for genetic testing under Family Code section 161.005(c) in this case. *See C.E.*, 391 S.W.3d at 204. We sustain Roy's second issue.

**Best Interest**

In his third issue, Roy assails the trial court's determination that Roy failed to show that the termination would be in the best interest of the children. Roy asserts that the trial court erred when it considered the twins' best interest in determining whether he was entitled to termination of the parent-child relationship under subsection 161.005(c). We agree.

As part of the 2011 amendments to section 161.005, the Legislature added the following italicized language to subsection 161.005(a): "*Except as provided by Subsection (h)*, the court may order termination if termination is in the best interest

17

of the child." TEX. FAM. CODE ANN. § 161.005(a) (emphasis added). Subsection (h) provides: "If the results of genetic testing ordered under Subsection (f) exclude the petitioner as the child's genetic father, the court shall render an order terminating the parent-child relationship." *Id.* § 161.005(h). Although a parent may still seek termination of the parent-child relationship based on the best interest of the child under subsection 161.005(a), termination sought under subsection (c) does not include a best-interest determination. If a petitioner makes a prima facie showing under subsection (f), entitling him to genetic testing, and the genetic testing excludes him as the father, then he is entitled to termination under subsection (h), irrespective of the child's best interest. *See id.* §§ 161.005(a),(c),(f),(h). Thus, the trial court's determination that Roy did not show that termination was in the twins' best interest cannot support denial of his termination request under subsection 161.005(c).

We sustain Roy's third issue.

## Conclusion

We reverse the trial court's judgment and remand for further proceedings.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

18