**Opinion issued June 21, 2016**



In The

# Court of Appeals

For The

## First District of Texas

———————————

### NO. 01-15-00257-CV

———————————

**VANESSA ANDERSON, Appellant**

**V.**

**AMERICAN RISK INSURANCE COMPANY, INC., Appellee**

---

On Appeal from the 295th District Court
Harris County, Texas
Trial Court Case No. 2012-68212

---

### MEMORANDUM OPINION

Vanessa Anderson appeals the trial court's rendition of summary judgment in favor of American Risk Insurance Company, Inc. ("ARIC"). Anderson brought contractual and extra-contractual claims against ARIC related to an insurance coverage dispute that arose after her house was damaged during a storm. After

paying the appraisal award, ARIC filed a traditional motion for summary judgment on all claims. The trial court granted summary judgment and rendered a take-nothing judgment. Anderson contends that the trial court erred in granting summary judgment because material issues of fact existed and payment of the appraisal award did not preclude her claims. We affirm.

## Background

Anderson's residence in Spring, Texas was covered by an ARIC homeowner's insurance policy. During a storm on June 12, 2012, a tree fell through the roof of her home. All told, after the storm, one bedroom and one bathroom were destroyed by the tree, and the home had no water, power, or air conditioning.

According to her summary-judgment affidavit, Anderson called ARIC to report the loss that day, but she was only able to reach an answering service, which told her that an ARIC representative would be in touch. On June 13, 2012, Anderson called ARIC again and spoke with Chad Pleasant. Pleasant was not aware that Anderson had called the day before and informed her that someone would be out to inspect the loss. He further stated that Anderson would have to submit receipts for expenses incurred in relation to the loss and that she was responsible for any further damage to her home. According to Anderson's affidavit, Pleasant promised a return call, but did not call her back "right away."

2

Anderson further averred that reimbursements from ARIC "were severely delayed."

ARIC's summary-judgment evidence shows that, within three days of the tree falling, Steve Mazey inspected the property on behalf of ARIC. Mazey estimated the total loss at $58,784.05, a figure that included the actual cash value of damage to the home as well as $500 to compensate for the loss of food in two refrigerators and $1,688.66 to compensate for damage to the backyard fence. Less the $2,500 deductible, the estimated total owed to Anderson under the policy was $56,284.05. Mazey recommended an initial payment of $47,505.79 and a completion payment of $8,778.26.

From June to September 2012, ARIC made a series of payments to Anderson totaling $52,475.22. On June 15, 2012, ARIC issued Check No. 1289 for $500. On July 3, 2012, ARIC issued three checks to Anderson: Check No. 1354 for $47,005.79, Check No. 1355 for $500.00, and Check No. 1356 for $172.52. On September 6, 2012, ARIC issued another two checks: Check No. 1544 for $3,081.00 and Check No. 1545 for $1,215.91.

Anderson lived at the apartment complex Marquis at Woodlands from August 11, 2012, through October 10, 2012. According to her affidavit, she accrued late fees because ARIC was slow to reimburse her though she was "very

prompt about submitting" receipts. Anderson concludes her affidavit by explaining:

> There was very little to no response from carrier from the moment I filed the claim. [Additional living expenses] were reimbursed extremely slow or not at all. I owe relatives money for rent and apartment complex rent and utilities. My credit is on the line for unpaid debt.

On November 8, 2012, Anderson sent a demand letter to ARIC seeking $300,000 to settle her claims: $200,000 for actual damages, $25,000 for mental anguish, and $75,000 for attorney's fees and expenses. On November 20, 2012, she filed suit, asserting claims for breach of contract, breach of the common law duty of good faith and fair dealing, various violations of Chapter 541 of the Texas Insurance Code and Deceptive Trade Practices Act ("DTPA"), and violations of the prompt payment provisions set forth in Chapter 542 of the Texas Insurance Code.

ARIC answered and denied all of Anderson's allegations. In May 2013, the parties attempted mediation, but were unable to resolve the dispute. ARIC then invoked its right to appraisal, as provided for under the policy, and designated Scott Gerner as its appraiser.[1] Anderson initially refused to participate in the

---

[1] The appraisal provision of the policy provides:

**Appraisal**. If you and we fail to agree on the actual cash value, amount of loss, or the cost of repair, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the

4

appraisal process, and ARIC filed a motion to compel appraisal. In September 2013, the trial court granted ARIC's motion to compel appraisal, and Anderson designated Darrin Snuggs as her appraiser. In December 2013, pursuant to an agreed motion, the trial court appointed John A. Coselli, Jr. to serve as a neutral umpire for the appraisal.

In an affidavit filed in support of ARIC's summary-judgment motion, Gerner averred that he attempted to contact Snuggs to coordinate appraisal on multiple occasions between November 2013 and March 2014, but Snuggs never responded. In April 2014, Anderson appointed a new appraiser, Max Judge. According to Gerner's affidavit, Judge initially informed Gerner that he did not intend to inspect the property because repairs were already 70% complete. Ultimately, however, Gerner and Judge both inspected Anderson's property on May 17, 2014. Gerner submitted his initial estimate to Coselli two days later and

other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of the loss, stating separately the actual cash value and loss to each item.

If the appraisers fail to agree, they will submit their differences to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

provided a requested room-by-room comparison on June 24, 2014.[2] Coselli issued the appraisal award on July 17, 2014, and Gerner co-signed that award on August 1, 2014.

The appraisal award set the total replacement cost value for Anderson's home and other structures at $75,289.90. Less the $2,500 deductible and prior payments, the net appraisal award payment due for dwelling and other structures totaled $24,666.20.[3] The appraisal award set the total additional living expenses ("ALE") owed at $21,000. Less prior payments and the amount above policy limits, the net appraisal award payment due for additional living expenses totaled $8,746.48.[4] ARIC's summary-judgment evidence shows that ARIC issued checks to Anderson on August 8, 2014, in the amounts of $24,666.20 and $8,746.48, in payment of the appraisal award.

In October 2014, ARIC moved for traditional summary judgment on all claims. ARIC asserted that it was entitled to judgment as a matter of law on

---

[2]   Anderson has not directed our attention to, nor have we found, any evidence in the record showing whether and when Judge submitted his appraisal estimate or the amount of Judge's appraisal estimate.

[3]   ARIC reduced the gross appraisal award to account for two prior payments: Check No. 1354 for $47,005.70 paid on July 3, 2012; and Check No. 1545 for $1,215.91 paid on September 6, 2012.

[4]   The policy limits compensation for additional living expenses to $12,500, and thus ARIC reduced the gross appraisal award for ALE by $8,500 to bring the award within policy limits. The gross appraisal award for ALE was further reduced to account for three prior payments: Check No. 1355 for $500 paid on July 3, 2012; Check No. 1356 for $172.52 paid on July 3, 2012; and Check No. 1544 for $3,081.00 paid on September 6, 2012.

Anderson's breach of contract and extra-contractual claims because it fulfilled its obligations under the contract by timely paying the appraisal award. ARIC further asserted that it was entitled to judgment as a matter of law on the extra-contractual claims because there was a bona fide dispute about the amount of covered damages and Anderson's alleged damages are barred by the economic loss rule. Finally, ARIC argued that no genuine issue of material fact existed on the misrepresentation and fraud claims because Anderson had not identified any particular false representation which she relied upon to her detriment.

Anderson's response to summary judgment relied on only one additional piece of evidence: Anderson's own sworn affidavit. Anderson asserted in her response that ARIC "failed to make any payments after conducting an investigation and evaluation" and that material issues of fact existed on all claims.

Without stating its reasons, the trial court granted summary judgment in favor of ARIC on all claims.

## Discussion

Anderson contends that the trial court erred in granting summary judgment in favor of ARIC because material issues of fact prevent judgment as a matter of law and payment of the appraisal award does not preclude her extra-contractual claims.

## A.    Standard of Review

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).  If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

In a traditional summary-judgment motion, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015).  When the movant urges multiple grounds for summary judgment and the order does not specify which was relied upon to render the summary judgment, the appellant must negate all grounds on appeal. *McCoy v. Rogers*, 240 S.W.3d 267, 271 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993)).  "If summary judgment may have been

rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed." *Ellis*, 68 S.W.3d at 898 (citing *Holloway v. Starnes*, 840 S.W.2d 14, 23 (Tex. App.—Dallas 1992, writ denied)).

## B.     Breach of Contract

In her petition, Anderson alleged that ARIC was liable for breach of contract because it failed "to pay appellant's benefits relating to the cost to properly repair" her property.  ARIC argues that it is entitled to judgment as a matter of law on Anderson's breach of contract claim because the claim is precluded by ARIC's appraisal award payment.

Under Texas law, "[t]he essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach." *Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 892 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *CCC Grp., Inc. v. S. Cent. Cement, Ltd.*, 450 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

The Texas Supreme Court has long recognized the validity of appraisal provisions, which "provide a means to resolve disputes about the amount of loss for a covered claim." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 406–07 (Tex. 2011); *see also Scottish Union & Nat'l Ins. Co. v. Clancy*, 8

9

S.W. 630, 631 (Tex. 1888). Absent illegality or waiver, appraisal clauses are generally enforceable. *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009) ("In the absence of fraud, accident, or mistake, the parties having agreed that the amount of loss shall be determined in a particular way, we are constrained to hold that such stipulation is valid." (quoting *Scottish Union*, 8 S.W. at 631)); *Amine v. Liberty Lloyds of Tex. Ins. Co.*, 2007 WL 2264477, at \*3 (Tex. App.— Houston [1st Dist.] Aug. 9, 2007, no pet.) ("Appraisal awards made under the provisions of an insurance contract are binding and enforceable . . . ."). Texas courts indulge every reasonable presumption to sustain an appraisal award. *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.— Houston [14th Dist.] 2004, no pet.).

"Under Texas law, when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is 'estopped by the appraisal award from maintaining a breach of contract claim against [the insurer].'" *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, No. 11-20221, 2012 WL 181413, at \*2 (5th Cir. Jan. 24, 2012) (quoting *Franco*, 154 S.W.3d at 787). By payment of the full amount of an appraisal award, the insurer "complie[s] with every requirement of the contract, [and] it cannot be found to be in breach." *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex. App.—Corpus Christi 2004, pet. denied).

10

Here, the undisputed evidence shows that ARIC invoked the appraisal process, as provided for under the policy, to determine the value of Anderson's claim. Both parties appointed appraisers and agreed upon an umpire. By August 1, 2014, the appraisal award was set. One week later, ARIC tendered payment of the appraisal award after accounting for the deductible, prior payments, and policy limits. Accordingly, the summary judgment record conclusively shows that ARIC fulfilled its obligations under the contract. *See Scalise v. Allstate Tex. Lloyds*, No. 7:13-CV-178, 2013 WL 6835248, at *4 (S.D. Tex. Dec. 20, 2013) ("[A]n insurer does not breach the insurance contract where, as here, it pays all damages determined by the appraisal."); *Breshears*, 155 S.W.3d at 344 (insurer fulfilled every requirement of contract where it participated in appraisal process and timely paid amount set by appraisal award).

The fact that ARIC did not pay the amount of the award earlier, alone, does not raise a fact issue on Anderson's claim for breach of contract. *See Graber v. State Farm Lloyds*, No. 3:13-CV-2671-B, 2015 WL 3755030, at *4 (N.D. Tex. June 15, 2015) (concluding insured "estopped from relying on the appraisal award to demonstrate that [insurer] breached the Policy when it initially issued payment to [insured] for an amount less than the appraisal"); *Breshears*, 155 S.W.3d at 343 (explaining that insured may not use the fact that appraisal award was different than amount originally paid as evidence of breach of contract); *Scalise*, 2013 WL

11

6835248, at *5 ("[W]here the parties disagree on the amount of loss and submit to the contractual appraisal process to resolve that dispute, and the insurer pays all covered damages determined by the award, the insured may not then argue that the initial failure to pay those damages equates to a breach of contract.").

Thus, we conclude that the trial court correctly rendered summary judgment in favor of ARIC on Anderson's breach of contract claim.

## C.    Extra-Contractual Claims

### 1.    Claim under Chapter 542 of Texas Insurance Code

Anderson's petition alleged a violation of section 542.058 of the Texas Insurance Code, which provides that an insurer shall pay damages, with interest, and attorney's fees if an insurer delays payment of a claim for longer than 60 days. TEX. INS. CODE § 542.058.  ARIC argues that it is entitled to judgment as a matter of law on Anderson's section 542.058 claim because it is undisputed that ARIC timely paid the appraisal award.

The insured bears the burden to establish its right to Chapter 542 remedies. *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004).  To establish that right, the insured must prove that "(1) a claim was made under an insurance policy, (2) the insurer is liable for the claim, and (3) the insurer failed to follow one or more sections of the prompt-payment statute with respect to the claim."  *United Nat'l Ins. Co. v. AMJ Invs., LLC*, 447 S.W.3d 1, 13 (Tex.

App.—Houston [14th Dist.] 2014, pet. dism'd). That said, full and timely payment of an appraisal award under the policy precludes an insured from recovery of penalties under section 542.058 as a matter of law. *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding).

Here, the summary judgment evidence demonstrates that the parties participated in the appraisal process and that an appraisal award was determined on August 1, 2014. It is undisputed that ARIC issued checks in full payment of the appraisal award on August 8, 2014—well within the timeliness requirements of section 542.058. Because the summary judgment evidence conclusively demonstrates that ARIC fully and timely paid the appraisal award, Anderson is precluded from maintaining her prompt payment claim as a matter of law. *See In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d at 563 ("Texas courts . . . have concluded that full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law."); *see also United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, No. H-10-4248, 2015 WL 1470296, at *9 (S.D. Tex. Mar. 31, 2015) (collecting cases).

Accordingly, we conclude that the trial court correctly rendered summary judgment in favor of ARIC on Anderson's prompt payment claim under section 542.058 of the Insurance Code.

### 2. *Breach of the Duty of Good Faith and Fair Dealing*

Anderson alleged that ARIC breached its common law duty of good faith and fair dealing "by denying [Anderson's] claims or inadequately adjusting and making an offer on [Anderson's] claims without any reasonable basis, and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for these denials." ARIC argues on appeal, as it did in the trial court, that it is entitled to judgment as a matter of law on Anderson's common law bad faith claim because there was no breach of contract, and even had there been, there was a bona fide dispute about coverage.

Under Texas law, "[a]n insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995). An insurer breaches this duty of good faith and fair dealing "if the insurer knew or should have known that it was reasonably clear that the claim was covered," but denies or unreasonably delays payment of the claim. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55–56 (Tex. 1997).

However, "absent a breach of contract, the insured cannot maintain a common law bad faith claim in Texas unless the insurer 'commit[s] some act, so extreme, that would cause injury independent of the policy claim' or 'fails to timely investigate the insured's claim.'" *Graber*, 2015 WL 3755030, at *5 (quoting *Stoker*, 903 S.W.2d at 341). "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).

Here, ARIC's payment of all covered damages extinguished any breach of contract claim arising from the dispute. Thus, in order to avoid summary judgment on her common law bad faith claim, Anderson had the burden to raise a genuine issue of material fact that ARIC "commit[ed] some act, so extreme, that would cause injury independent of the policy claim" or failed to timely investigate her claim. *See Stoker*, 903 S.W.2d at 341. We conclude that Anderson did not present evidence of an act so extreme that it caused injury independent of the policy claim. *See Scalise*, 2013 WL 6835248, at *7 (finding no independent injury where insured "made only those fairly routine allegations of a substandard (albeit timely) investigation and initial undervaluation of his covered claim, the entirety of which was timely paid upon issuance of the appraisal award"); *see also Mid-Continent Cas. Ins. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 521–22 (5th Cir. 2013) (noting that "in seventeen years since [*Stoker*] appeared, no Texas court has yet held that

15

recovery is available for an insurer's extreme act . . . ."). Rather, the summary judgment evidence demonstrates only a bona fide dispute about the amount necessary to compensate Anderson for covered damage to her home. *See Simmons*, 963 S.W.2d at 44 ("Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith.").

Nor did Anderson raise a fact issue on the question of whether ARIC failed to timely investigate her claim. Within 15 days of receiving notice of a claim, insurers are required to acknowledge receipt of the claim, commence investigation of the claim, and request items and forms "that the insurer reasonably believes, at that time, will be required from the claimant." TEX. INS. CODE § 542.055(a)(1)–(3). Here, undisputed summary judgment evidence shows that on June 15, 2012—three days after Anderson reported the claimed loss—a representative of ARIC inspected the property. Thus, the evidence conclusively shows that ARIC acknowledged receipt and commenced an investigation of the claim within the prescribed 15-day window.

In sum, because Anderson's breach of contract claim fails and she has failed to show that ARIC caused her to suffer some injury independent of her policy claim or failed to timely investigate her claim, we conclude that there is no genuine fact issue on Anderson's common law duty of good faith and fair dealing claim,

16

and thus the trial court did not err in rendering judgment as a matter of law on this claim in favor of ARIC. *See Graber*, 2015 WL 3755030, at *7.

3. *Bad Faith Claims under Texas Insurance Code and DTPA*

Anderson's petition alleged that ARIC violated Chapter 541 of the Insurance Code and the DTPA by "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear," and by "refusing to pay a claim without conducting a reasonable investigation with respect to the claim."

Under Texas law, an individual damaged by "unfair method[s] of competition or unfair or deceptive act[s] or practice[s] in the business of insurance" may bring a cause of action under the Texas Insurance Code. TEX. INS. CODE § 541.151. "The prohibited conduct includes 'failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 860–61 (5th Cir. 2003) (quoting TEX. INS. CODE § 541.151). A violation of Chapter 541 of the Texas Insurance Code is also a violation of the DTPA. TEX. BUS. & COM. CODE § 17.50(a)(4).

"Texas law holds that extra-contractual tort claims pursuant to the Texas Insurance Code and the DTPA require the same predicate for recovery as a bad faith claim under a good faith and fair dealing violation." *Broxterman v. State*

17

*Farm Lloyds*, No. 4:14-CV-661, 2016 WL 482882, at \*2 (E.D. Tex. Feb. 4, 2016). "When an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either statutory claim." *O'Quinn v. Gen. Star Indem. Co.*, No. 1:13-CV-471, 2014 WL 3974315, at \*8 (E.D. Tex. Aug. 5, 2014).

As we concluded above, there is no merit to Anderson's bad faith claim given that she failed to present evidence of breach of contract, independent injury, or untimely investigation. As a result of these same failings, there can be no liability under Anderson's Chapter 541 and related DTPA claims. *See Graber*, 2015 WL 3755030, at \*7; *O'Quinn*, 2014 WL 3974315, at \*8.

### 4. *Misrepresentation and Common Law Fraud by Negligent Misrepresentation*

Anderson's petition alleged that ARIC was liable for an intentional misrepresentation and for common law fraud by negligent misrepresentation. ARIC argues that it is entitled to judgment as a matter of law on such claims because post-loss misrepresentations are not actionable and Anderson has failed to plead a specific and material false representation.

To maintain a misrepresentation claim, a plaintiff must substantively plead a misrepresentation that was a producing cause of his actual damages. TEX. BUS. & COM. CODE § 17.50(a). To recover on a fraud claim, a party must prove that (1) a

18

material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party suffered injury as a result. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009)).

Here, Anderson has neither alleged nor adduced summary judgment evidence demonstrating "some specific misrepresentation by the insurer or agent about the insurance" that was a producing cause of her alleged damages, as required by section 17.50(a) of the Texas Business and Commerce Code. She has similarly failed to identify a particular material false representation, as necessary to sustain her common law fraud claim. Because Anderson failed to adduce evidence creating a fact issue on both claims, ARIC was entitled to judgment as a matter of law on her misrepresentation and common law fraud by negligent misrepresentation claims.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Keyes, Brown, and Huddle.