**Opinion issued August 27, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-22-00251-CV

————————————————

**STEPHEN H. DERNICK AND DAVID D. DERNICK, Appellants**

**V.**

**FOLEY & LARDNER LLP, SUCCESSOR-IN-INTEREST TO GARDERE WYNNE SEWELL, LLP, TIMOTHY SPEAR, JAMES G. MUNISTERI, AND SHARON M. BEAUSOLEIL, Appellees**

---

**On Appeal from the 269th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-77937**

---

## MEMORANDUM OPINION

This appeal involves a suit for breach of fiduciary duty filed by Appellants against their former law firm and some of its lawyers. Appellees moved to dismiss Appellants' legal action under the Texas Citizens Participation Act. Following a

hearing, the trial court granted the motion, dismissed Appellants' claims, and awarded attorneys' fees to Appellees.[1]  On appeal, Appellants argue the trial court erred in granting Appellees' motion because (1) their claims against Appellees are not based on or in response to Appellees' right to petition, (2) their legal action is exempted from the TCPA under the commercial speech exception, (3) they established a prima facie case for each element of their claims, and (4) Appellees did not establish their affirmative defenses.  Appellants also argue that the trial court abused its discretion by "refusing to award them fees when the record demonstrated that [Appellees'] motion was frivolous or brought solely to delay," and to the extent that Appellees were entitled to attorneys' fees, the amount awarded was unreasonable and without evidentiary support.

Because we conclude that Appellants' legal action is not based on or in response to Appellees' right to petition, the trial court erred in granting Appellees' motion and dismissing Appellants' claims.  We reverse and remand.

## Background

**DRI and Cinco**

In their Original Petition, Appellants Stephen and David Dernick allege that beginning in 1981, they were "50/50 partners in Dernick Resources, Inc. ("DRI")," an oil and gas exploration and production company.  The Dernicks were sole

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE §§ 27. 001—.011.

owners of DRI until 2002, when they sold a controlling interest to Yorktown Partners ("Yorktown"), a private equity firm, for a "$70 million capital commitment."

Beginning in 2005, Appellee Foley & Lardner, LLP, formerly known as Gardere Wynne Sewell, LLP ("Foley"), began representing DRI in several matters. Appellee Alan Buckner, a partner at Foley, handled DRI's work until he left the firm in 2008 to become DRI's in-house general counsel "in anticipation of an IPO." After Buckner's departure, Appellee Timothy Spear took over DRI's representation. According to the Dernicks, Spear "was intimately familiar with DRI's business and legal affairs, as well as the Dernicks' business and legal affairs." They alleged that at "all times material, an attorney-client relationship existed between the Dernicks" and Foley, including Spear.

The Dernicks alleged that Yorktown "was managing a portfolio company named Cinco Natural Resources, Inc." that "was underperforming." Yorktown suggested to the Dernicks that DRI merge with "Cinco prior to the IPO so that DRI could acquire Cinco's executive team." The Dernicks opposed the merger and "refused to tender their DRI shares to Cinco because Yorktown overvalued Cinco." Ultimately, Yorktown and Cinco "entered negotiations with the Dernicks for severance and change of control packages." Their exits were finalized in August

3

2009. The Dernicks each received compensation "valued at $25.8 million, resulting in the Dernicks owning 12% of Cinco."

According to the Dernicks, Foley "represented the Dernicks individually during these negotiations, including handling the documentation of their severance and change of control exit packages." Foley argues it did not represent the Dernicks in their capacities as officers of DRI. Foley, however, negotiated the Dernicks' exit packages from DRI. And the Dernicks alleged that "[a]t all times material, an attorney-client relationship existed between the Dernicks and the [Foley] firm," Foley "represented the Dernicks individually during these negotiations," and there was "an explicit attorney-client relationship between the Dernicks and Gardere."

After the merger between DRI and Cinco, Foley advised DRI that it had received a request to represent the Dernicks, Buckner, and former DRI chief financial officer Dennis Bartoskewitz (collectively, the "Cinco Minority") in a matter adverse to the new Cinco entity. Buckner had requested that Foley provide advice regarding potential claims of the minority shareholder group against Cinco (the "Cinco Dispute").

**Dernick Encore**

In early 2010, the Dernicks formed Dernick Encore LLC ("Encore"), an oil and gas company whose managing partner was Dernick Land LLC ("Dernick

4

Land"), an entity formed by and owned by the Dernicks. Encore then hired Buckner as its Vice President and General Counsel. The Dernicks allege that Foley represented Encore, "taking direction from" the Dernicks. They allege that Foley represented Encore since its inception in March 2010.

The Dernicks were officers of Encore until March 2017. Foley asserts that no advice was provided to the Dernicks as individuals and that it did not represent the Dernicks in their individual capacities as officers of Encore.

**The Cinco Lawsuit**

The Dernicks allege that commencing in 2009, Cinco began acquiring valuable leases in the Eagle Ford Shale, which Cinco ultimately sold to Cima Energy LLC, an entity formed by "Yorktown and all of the other owners of Cinco except for the Dernicks, Buckner and Bartoskewitz" (collectively, the "Minority Shareholders"). According to the Dernicks, the sale of the leases to Cinco, which was not disclosed to the Minority Shareholders, "fraudulently diluted the value of the Cinco shares held by the Minority Shareholders, including the Dernicks." After "discovering the fraudulent dilution," Buckner contacted Spear at Foley to help the Minority Shareholders pursue legal action against Cinco and Cima. Spears later associated his partner at Foley, Appellee James Munisteri, to represent the Cinco Minority in the dispute.

The "parties negotiated for several months into mid-2012 until the Minority Shareholders threatened suit." Cinco responded "by filing suit against the Cinco Minority Shareholders, first in Texas . . . and then in Delaware." Gardere asserts that in 2011 and 2012, Buckner, Encore's general counsel, asked Gardere to perform legal research and provide a "limited amount" of legal advice regarding the lawsuits, and that in 2012 and 2013, Foley provided limited research for the Cinco Minority Shareholder Group. The Dernicks instead allege that the Cinco Minority retained Foley and "entered into an engagement agreement with [Foley] to represent them in the dispute with Cinco." To "further" Foley's representation, Appellants assert that Stephen Dernick drafted a memorandum for Foley that "outlined a chronology of events observations and provided 'key documents' related to the dispute." Foley argues that they were hired on a limited and defined basis "in connection with the preparation of the initial answers" to the litigation, and that their representation ended three months later.

The Cinco dispute ultimately settled. As part of the settlement, Cinco, Yorktown, and "Riley Exploration Group, LLC, another Yorktown portfolio company, . . . were to [among other things] redeem all of the Minority Shareholders' Cinco stock and warrants for a series of cash payments from Riley" and would pay "$250,000 to reimburse the legal fees incurred by the Minority Shareholders, including those legal fees billed by [Foley] to the Minority

6

Shareholders." The Dernicks allege that the settlement "was for the benefit of all Minority Shareholders, of which the Dernicks accounted for approximately 88% of the settlement benefits." The Dernicks assert that they paid Foley's invoices from the settlement. According to the Dernicks, Foley did not notify the Cinco Minority that it was withdrawing from representing them, nor did the Cinco Minority terminate Foley.

The Dernicks allege that to "accommodate the final split of the cash and APO Interest from the Riley Settlement, Buckner, on behalf of the Minority Shareholders," instructed Foley "to form Corsa Petroleum, LLC for the Minority Shareholders to take ownership of the APO Interest, and Cavallo, LLC for the Minority Shareholders to be paid the cash." Ultimately, "the plan to distribute the interests and proceeds into Corsa and Cavallo was abandoned," and Buckner instructed Foley to dissolve both entities. Foley argues that it did not represent Corsa or Cavallo.

**The Bankruptcy Proceeding**

Following an unrelated dispute between the Dernicks and one of their lenders, the Dernicks filed a Chapter 11 bankruptcy proceeding in May 2018 to stay enforcement of a judgment entered against them. Shortly after they filed for bankruptcy, an initial creditors meeting took place to "allow[] all creditors to ask the Dernicks questions about their assets and liabilities[.]" A Foley attorney,

7

Sharon Beausoleil, attended on behalf of Encore. The Dernicks allege that although "Encore was not a creditor, it instructed [Foley] to attend the meeting on its behalf [to] question the Dernicks about Corsa and Cavallo, and the cash payments and APO Interest . . . ."[2] It became evident at the meeting that "Encore was somehow going to claim that the cash and APO Interest that the Dernicks were paid pursuant to the Riley Settlement were somehow a business opportunity of Encore" and that Foley was thus "setting the stage to file an adversary proceeding against the Dernicks, its own former clients."

The Dernicks, through their bankruptcy counsel, contacted Beausoleil at Foley to notify her "of the obvious conflict that [Foley] was engaging in by acting adverse to the Dernicks who were former clients of [Foley]." He requested that Foley withdraw, citing a conflict in Foley's representation of Encore, but Foley refused and "continued with the conflicted representation," prompting the Dernicks' bankruptcy counsel to file a motion to disqualify Foley "from representing Encore, based on the conflict of interest that would arise" if Foley pursued claims against the Dernicks on behalf of Encore.

The Dernicks allege that in response Foley proffered an affidavit from Spear, who testified that Foley had formed Corsa and Cavallo for Encore, not the Cinco Minority. And Beausoleil argued that Foley "terminated the 2013

---

[2] Appellees assert that Encore was one of the Dernicks' creditors, but the Dernicks allege in their Original Petition that Encore was not a creditor.

8

engagement letter relating to the Cinco dispute shortly after it was entered." After two hearings on the motion to disqualify, the bankruptcy court denied the motion. The bankruptcy court's order includes a finding that the Dernicks "presented no evidence that the matters are substantially related or that [Encore's] counsel has relevant confidential information" regarding the Dernicks.

Beausoleil subsequently conducted an examination of Stephen Dernick during which, according to the Dernicks, he explained "in detail everything to do with the Cinco/Cima dispute and the settlement with Cinco/Riley/Yorktown, including reminding Beausoleil when and how [Foley] represented the Dernicks individually, including representation related to the formation of Corsa and Cavallo." The Dernicks allege that notwithstanding, two months later Foley filed an adversary proceeding against the Dernicks, its former clients, on behalf of Encore, asserting it had formed Corsa and Cavallo for Encore, and accusing the Dernicks of fraud and embezzlement, among other things. They claim that later, "Spear admitted that [Foley had] in fact form[ed] Corsa and Cavallo for the Minority Shareholders" and that "it was also established that [Foley's] representation of the Dernicks involved the same transaction which allegedly gave rise to Encore's claims against the Dernicks." Foley, however, "never obtained informed consent from the Dernicks to represent Encore in this substantially related matter."

9

The adversary proceeding and other pending disputes were ultimately resolved in a global settlement. Dernick Land then sued Encore to recover alleged unpaid management fees, and Foley represented Encore. That dispute was mediated and ultimately settled. But according to the Dernicks, the settlement could not resolve or remedy the damage occasioned by Foley's breach of fiduciary duty. The Dernicks thus filed suit against Foley for breach of fiduciary duty.

**The Present Litigation**

The Dernicks filed the present lawsuit against Foley and attorneys Spear, Munisteri, and Beausoleil asserting claims for breach of fiduciary duty, civil conspiracy, and aiding and abetting breach of fiduciary duty "by assisting and encouraging." In their Original Petition, the Dernicks allege that Appellees "represented the Dernicks in several matters, including the Cinco/Cima dispute through its settlement in 2015, and in the formation of Corsa and Cavallo,' and thus they "owed the Dernicks fiduciary duties as a matter of law."[3] The Dernicks allege that Appellees:

> [B]reached their fiduciary duties by engaging in conflicts of interest, placing personal interests and the interests of Encore and other clients over the interests of the Dernicks, improperly using the Dernicks' confidences and confidential information, taking advantage of the

---

[3] They allege their fiduciary duties included "(1) the duty to preserve client confidences, (2) the duty to represent the client with undivided loyalty, (3) the duty to act with absolute perfect candor, honesty, and without concealment or deception, (4) the duty to refrain from self-dealing, and (5) the duty to avoid conflicts of interest."

10

Dernicks' trust, engaging in self-dealing, and making misrepresentations.

Specifically, [Foley] represented Encore and other clients in claims that were substantially related to [Foley's] representation of the Dernicks. [Foley] did so without adequately disclosing the conflict of interest to the Dernicks or obtaining their consent to engage in the joint representation. What is worse, [Foley] and Beausoleil asserted claims against the Dernicks for fraud and other purported malfeasance, based on allegations that [Foley] knew were false because it had represented the Dernicks in related transactions and disputes. [Foley] owed the Dernicks fiduciary duties to decline representation of Encore in the adversary proceeding and should have informed Encore that the allegations had no basis in fact. Instead, [Foley], Spear, and Beausoleil conspired with Encore to manufacture bogus claims against its own former clients (the Dernicks) to advance the interests of other clients (like Encore) and itself by accumulating attorney's fees.

The Dernicks also allege that Appellees are liable for civil conspiracy to commit breach of fiduciary duty and aiding and abetting breach of fiduciary duty. They seek to recover attorneys' fees incurred in defending against the adversary proceeding, consequential damages for lost oil and gas deals, management fees, salaries, and ownership interests, and equitable fee forfeiture requesting disgorgement of improper benefits and fees.

Foley filed an Application to Compel Arbitration and Stay Proceeding and, subject to the Application, an Original Answer. About one month later, Foley moved to dismiss the Dernicks' legal action under the Texas Citizens Participation Act, arguing that the Dernicks' lawsuit is based on and in response to Appellees' "exercise of the right to petition." The Dernicks argued in response that their

11

claims are not subject to dismissal under the TCPA because their claims are not based on communications, but rather conduct and failure to communicate. And to the extent any communications were made, they argue the communications belong to Encore, not the Appellees, and thus Appellees' right to petition is not involved.

After a hearing, the trial court signed an order granting Appellees' TCPA motion and dismissing the Dernicks' claims, reserving its ruling on attorneys' fees. The Dernicks filed a notice of appeal. Subsequently, Appellees filed an application for attorneys' fees, seeking $101,757.50 plus $11,030.00 for anticipated fees incurred to prepare and argue the attorney fee application and conditional appellate fees. The trial court granted the application but reduced the attorneys' fees for arguing the application to $5,500. The order also awarded contingent attorneys' fees for appeal.

## The Issues on Appeal

The Dernicks raise three issues on appeal. In their first issue, they argue the trial court erred in dismissing their claims because Appellees did not establish that Appellants' claims are based on or in response to Appellees' right to petition; Appellees did not identify a communication that would invoke the TCPA; Appellants' clams are not based on or in response to communications, but on failures to communicate or act; their claims are not "factually predicated on protected communications;" and Appellees cannot rely on communications made

12

on behalf of their client, Encore, to invoke the right to petition. The Dernicks also argue that the commercial speech exemption applies precluding dismissal under the TCPA; that they established a prima facie case for each element of their claims, and that Appellees did not prove their affirmative defenses.

In their second and third issues, the Dernicks argue the trial court erred by not awarding them attorneys' fees because Appellees' TCPA motion was frivolous and filed solely to delay, and to the extent that Appellees were entitled to attorneys' fees, the amount of fees awarded was unreasonable and without evidentiary support.

Appellees respond that the Dernicks' lawsuit is based entirely on communications Foley made in judicial proceedings on behalf of a client adverse to the Dernicks' interests. They assert that the TCPA thus applies, and dismissal was proper because the Dernicks' claims are "objectively based on and in response to Foley's 'exercise of the right to petition.'" Appellees argue that the commercial speech exemption does not apply because their communications were made as advocates of Encore in the litigation process, and not as participants in a commercial transaction. They further assert that the Dernicks did not establish a prima face case for each element of their claims. They also argue that the affirmative defenses of collateral estoppel, attorney immunity, and the judicial

proceedings privilege preclude the Dernicks' claims, and that the attorneys' fees the trial court awarded are reasonable.

**Applicable Law**

The Texas Citizens' Participation Act "is a bulwark against retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern." *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019). The TCPA is intended "to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding); *accord Borgelt v. Austin Firefighters Ass'n, IAFF Loc. 975*, No. 22-1149, ___ S.W.3d ___, 2024 WL 3210046, at *16 (Tex. June 28, 2024) (quoting *Lipsky*, 460 S.W.3d at 589). The TCPA's purpose "is to 'encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.'"[4] *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (quoting TEX. CIV. PRAC. & REM. CODE § 27.002). We construe the TCPA liberally to effectuate its purpose and intent. *Id.*

---

[4]     The TCPA is "considered to be anti-SLAPP legislation. SLAPP stands for Strategic Lawsuit Against Public Participation[.]" *In re Lipsky*, 411 S.W.3d 530, 536 n.1 (Tex. App.—Fort Worth 2013, no pet.) (citation omitted).

The TCPA enables a party who claims a legal action was filed based on or in response to its exercise of a constitutionally protected right to seek dismissal of the underlying action, attorneys' fees, and sanctions at an early stage in the litigation. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.003, .005, .009(a); *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019); *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 469-70 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd). The TCPA is applicable if the plaintiff's legal action "is based on or is in response to" the defendant's exercise of "(A) the right of free speech, (B) the right to petition, or (C) the right of association." TEX. CIV. PRAC. & REM. CODE § 27.005(b); *Lipsky*, 460 S.W.3d at 586–87.[5] A "legal action" can comprise a petition, counterclaim, single cause of action, or an entire lawsuit. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(6); *Creative Oil & Gas*, 591 S.W.3d at 131.

To seek dismissal under the TCPA, a movant must first establish by a preponderance of the evidence "that the conduct forming the basis of the legal action filed against the movant falls within the purview of the TCPA." *Panton Inc. v. Bees360, Inc.*, No. 01-20-00267-CV, 2021 WL 3868773, at *3–4 (Tex. App.—Houston [1st Dist.] Aug. 31, 2021, no pet.) (mem. op.). Appellees sought

---

[5] The Texas Legislature amended the TCPA effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–12 (codified at TEX. CIV. PRAC. & REM. CODE §§ 27.001–.010). Because this suit was filed after the effective date of the amendments, all citations to the TCPA in this opinion refer to the statute as amended in 2019.

dismissal of the Dernicks' legal action, arguing their claims were filed in response to the exercise of their right to petition. Appellees thus had to establish, by a preponderance of the evidence, that the Dernicks' lawsuit "is based on or is in response to" Appellees' exercise of the right to petition. TEX. CIV. PRAC. & REM. CODE § 27.003.[6]

"If the movant makes this initial showing, the burden then shifts to the nonmovant to establish 'by clear and specific evidence a prima facie case for each essential element' of its claims." *Panton*, 2021 WL 3868773 at \*4 (citing TEX. CIV. PRAC. & REM. CODE § 27.005(b)); *see Lipsky*, 460 S.W.3d at 586–87. If the nonmovant establishes a prima facie case for each element of its claims, the burden shifts back to the movant to establish by a preponderance of the evidence each essential element of a valid defense. *Panton*, 2021 WL 3868773 at \*4 (citing TEX. CIV. PRAC. & REM. CODE § 27.005(d)).

---

[6] The 2019 amendment to the TCPA narrowed the scope of the statute. The amended version of the statute omitted the phrase "relates to" from the TCPA. Thus, we now consider the narrower question of whether the Dernicks' claims were "based on or in response to" the TCPA protected right of the freedom to petition. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 2–3, 2019 Tex. Sess. Law Serv. 684, 685 (noting removal of "relates to" in sections 27.003(a) and 27.005(b) in the 2019 amendments). The amendment requires TCPA movants "to establish a closer nexus between the claims against them and the communications they point to as their exercise of protected rights." *Newstream Roanoke 6.125, LLC v. Shore*, No. 02-22-00506-CV, 2023 WL 5615871, at \*4 (Tex. App.—Fort Worth Aug. 31, 2023, no pet.) (mem. op.) (quoting *ML Dev, LP v. Ross Dress for Less, Inc.*, 649 S.W.3d 623, 629 (Tex. App.—Houston [1st Dist.] 2022, pet. denied)).

If the nonmovant establishes that one of the TCPA's exemptions apply, it can avoid the burden-shifting analysis. If the movant is successful and the court orders dismissal, "it shall award to the moving party court costs and reasonable attorney's fees incurred in defending against the legal action." TEX. CIV. PRAC. & REM. CODE § 27.009(a)(1). In addition, the court may award sanctions against the party who brought the legal action "as the court determines sufficient to deter the party who brought the legal action from bringing similar actions[.]" *Id.* § 27.009(a)(2).

**Standard of Review**

We review de novo a trial court's ruling on a motion to dismiss filed under the TCPA. *Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 83 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 892 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 200 (Tex. 2023) ("We review de novo whether the Act applies[.]"). We view the evidence and the pleadings in the light most favorable to the nonmovant. *Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017, no pet.). "[W]e remain mindful of our obligation to consider appellees' pleadings in the light most favorable to appellees and in favor of the conclusion that appellees' claims are not reliant on protected expression." *Cweren v. Eureka Multifamily Grp., L.P.*, No.

17

01-21-00470-CV, 2023 WL 2977755, at *16 (Tex. App.—Houston [1st Dist.] Apr. 18, 2023, pet. denied) (mem. op.) (citing *Abundant Life Therapeutic Servs., Tex., LLC v. Headen*, No. 05-20-00145-CV, 2020 WL 7296801, at *3 (Tex. App.—Dallas Dec. 11, 2020, pet. denied) (mem. op.)).[7] We read the pleadings and supporting or opposing affidavits "in the manner most sympathetic to the TCPA's non-applicability." *White Nile Software, Inc. v. Carrington, Coleman, Sloman & Blumenthal, LLP*, No. 05-19-00780-CV, 2020 WL 5104966, at *4 (Tex. App.—Dallas 2020, pet. denied) (mem. op.). We "favor[] the conclusion that [the nonmovants'] claims are not predicated on protected expression." *Union Pac. R.R. Co. v. Dorsey*, 651 S.W.3d 692, 695 (Tex. App.—Houston [14th Dist.] 2022, no pet.).

### The Right to Petition

Appellees moved for dismissal under the TCPA claiming that the Dernicks' legal action is based on and in response to their exercise of their right to petition. The TCPA defines the "right to petition" as

(A) a communication in or pertaining to:

(i) a judicial proceeding;

. . .

and

---

[7] Generally, the plaintiffs' pleadings are "the best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

(E) any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.

TEX. CIV. PRAC. & REM. CODE § 27.001(4)(A)(i), (E). The term "communication" includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic. *Id.* § 27.001(1). Although not defined in the statute, "[t]he ordinary meaning of 'judicial proceeding' is 'an actual, pending judicial proceeding.'" *Newstream Roanoke 6.125, LLC v. Shore*, No. 02-22-00506-CV, 2023 WL 5615871, at *4 (Tex. App.—Fort Worth Aug. 31, 2023, no pet.) (mem. op.) (quoting *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 429 (Tex. App.—Dallas 2019, pet. denied)); *see also Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 729 (Tex. App.—Dallas 2016, pet. denied) (stating that "a judicial proceeding is 'any proceeding initiated to procure an order or decree, whether in law or in equity.'") (quoting *Judicial proceeding*, BLACK'S LAW DICTIONARY (10th ed. 2014)).

In their Motion to Dismiss, Appellees argued that

All of the conduct and statements [the Dernicks] attribute to [the Lawyers] occurred during the course of and in connection with judicial proceedings in which [the Lawyers'] client was adverse to [the Dernicks]. As a consequence, all of the conduct and statements [the Dernicks] attribute to [the Lawyers] are within the right to petition under TEX. CIV. PRAC. & REM. CODE § 27.001(4).

Appellees contend that the Dernicks sued Foley "for its conduct in representing an existing client (Encore) who was then adverse to [the Dernicks], in judicial proceedings pending in United States Bankruptcy Court and in other litigation brought by an entity owned by [the Dernicks]."

The Dernicks argued in response to the Motion to Dismiss, as they do now, that Appellees did not establish that the Dernicks' legal action is based on or in response to Appellees' right to petition because they did not identify any specific communications, the claims are based on conduct and failure to communicate or act, and to the extent there are any communications giving rise to their claims, the right to petition based on those communications belongs to Encore, not Appellees. The Dernicks argue that, after they filed for bankruptcy protection in May 2018 and before Appellees filed the adversary proceeding on behalf of Encore, the Dernicks requested that Foley withdraw from its representation of Encore and, subsequently, filed a motion to disqualify Foley based on the underlying conflict they claim existed given Foley's prior representation of the Dernicks. According to the Dernicks, the bankruptcy court denied the motion to disqualify because no adversary proceeding had yet been filed, and because Spear proffered "false testimony" regarding the formation of Corsa and Cavallo.

The Dernicks assert in their Original Petition and on appeal that by undertaking its representation of Encore in matters substantially related to Foley's

20

prior representation of the Dernicks, Appellees breached the fiduciary duties they owed to the Dernicks, their former clients. They argue that Appellees failed adequately to "disclo[se] the conflict of interest to the Dernicks or obtain[] their consent to engage in the joint representation." And "worse, Foley and Beausoleil asserted claims against the Dernicks for fraud and other purported malfeasance, based on allegations [Foley] knew were false because it has represented the Dernicks in related transactions and disputes." They claim that Foley should have declined its representation of Encore in matters adverse to the Dernicks, including in the adversary proceeding.

The Dernicks argue that contrary to Appellees' argument, their claims are not based on or in response to the judicial proceedings stemming from Encore's adversary proceeding against the Dernicks because they would have the same breach of fiduciary claim against Appellees even in the absence of such adversary proceeding. They argue that their breach of fiduciary duty claim arises from Foley's representation of Encore adverse to the Dernicks without first consulting the Dernicks and obtaining their consent, and from the misuse of the Dernicks' confidential information in undertaking such adverse representation. They further argue that their claims are premised on Appellees' failure to communicate and their conduct.

21

We agree with the Dernicks that the TCPA is not implicated because their legal action is not based on or in response to Appellees' communications in the adverse proceedings, but rather their alleged actions and conduct in representing Encore adverse to the Dernicks—Foley's alleged former clients—without disclosing such representation or seeking their prior consent, and also based on Appellees' alleged improper use of the Dernicks' confidential information. Texas appellate courts, including our Court, "have declined to rewrite the TCPA to extend the definition of 'communication' to include [a failure] to communicate." *Rivas v. Lake Shore Harbour Cmty. Ass'n*, No. 01-22-00121-CV, 2023 WL 3063409, at *8 (Tex. App.—Houston [1st Dist.] Apr. 25, 2023, pet. denied) (mem. op.) (citing *Union Pac. R.R. Co. v. Chenier*, 649 S.W.3d 440, 448 (Tex. App.—Houston [1st Dist.] 2022, pet. denied)); *Hanna v. Williams*, 681 S.W.3d 416, 423 (Tex. App.—Austin 2023, pet. denied) ("[T]o the extent [Appellant's] claims are based on or in response to appellees' failures to communicate or act, such failures do not implicate the TCPA."). "The definition of 'communication' makes no reference to the withholding of a statement or document." *Krasnicki v. Tactical Ent., LLC*, 583 S.W.3d 279, 284 (Tex. App.—Dallas 2019, pet. denied)); *see also SSCP Mgmt. Inc. v. Sutherland/Palumbo, LLC*, No. 02-19-00254-CV, 2020 WL 7640150, at *3 (Tex. App.—Fort Worth Dec. 23, 2020, pet. denied) (noting TCPA's definition of communication "does not include a failure to communicate")

22

(citation omitted); *cf. Pacheco v. Rodriguez*, 600 S.W.3d 401, 410 (Tex. App.—El Paso 2020, no pet.) (holding when claim is based on defendant's conduct, TCPA is not implicated). Significant here, a failure "to communicate conflicts of interest" is tantamount to an allegation of "merely withholding statements or documents," which is insufficient to allege a TCPA-protected communication. *Locke Lord LLP v. Retractable Techs., Inc.*, No. 05-20-00884-CV, 2021 WL 1540652, at *2 (Tex. App.—Dallas Apr. 20, 2021, no pet.) (mem. op.) (citing *Krasnicki*, 583 S.W.3d at 284).[8]

To the extent that Appellees contend that Appellants' petition references some communications made in the adversary proceeding, "[s]imply alleging conduct that has a communication embedded within it does not create the relationship between the claim and the communication necessary to invoke the TCPA." *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 587 (Tex. App.—Fort Worth 2019, pet. denied). Our recent opinion in *Cweren*, 2023 WL 2977755, is instructive on this point. In *Cweren*, the trial court denied a TCPA motion to dismiss filed by an attorney and his law firm (collectively, the "Firm") in response to claims brought against them by their former clients, Eureka Multifamily Group, L.P. and its principals (collectively, "Eureka"). 2023 WL 2977755 at *1.

---

[8] We note that were we to define "communication" to include non-communications, it "would lead to an absurd result as nothing would be outside the scope of the TCPA." *Krasnicki v. Tactical Ent., LLC*, 583 S.W.3d 279, 284 (Tex. App.—Dallas 2019, pet. denied).

According to Eureka, during the Firm's representation, the Firm "received confidential information about the [Eureka] ownership entities, their key principals . . . and the operational services of Eureka and its managed properties." *Id.* at *2. Eureka argued that "[l]oyalty [was] an essential element in [the Firm's] relationship [with Eureka], as [was] preservation of [Eureka's] confidential information." *Id.*

Eureka's lawsuit against the Firm arose after the Firm filed suit against Eureka in county court to collect allegedly outstanding legal fees. *Id.* at *2.[9] Eureka argued that the Firm had filed the lawsuit to retaliate against them for their rejection of the Firm's aggressive and abusive payment demands. *Id.* Eureka also argued that the Firm had retaliated against them by "'appearing in lawsuits [to represent] clients against one or more of the [Eureka] managed properties' even though [the Firm] had previously represented those Eureka managed properties, which created a conflict of interest." *Id.* at *3. Eureka sued the Firm for negligence, gross negligence, breach of fiduciary duty, and abuse of process alleging, among other things, that the Firm had acted "on a basis that constituted a conflict of interest, without disclosing the existence of such conflicts, obtaining a waiver of the same, and without withdrawing from the ongoing representation,"

---

[9] The Firm's attorney was not a party to the county court suit. *Cweren v. Eureka Multifamily Grp., L.P.*, No. 01-21-00470-CV, 2023 WL 2977755, *2 (Tex. App.—Houston [1st Dist.] Apr. 18, 2023, pet. denied) (mem. op.).

and "improperly and unlawfully us[ed] confidential client information provided by [Eureka] adversely to them, without their knowledge or consent[.]" *Id.* at *3, *6.

Like Foley, the Firm filed a TCPA motion to dismiss arguing Eureka's claims were "based on, related to, and [were] in response" to the Firm's exercise of its right to petition and Eureka could not satisfy its evidentiary burden to establish its claims. *Id.* at *4. In response to the motion to dismiss, Eureka asserted that its suit against the Firm arose from the Firm's "provision of legal services, misrepresentations and deceptive acts and practices related to those services, and a subsequent commercial dispute [over legal] fees" and thus the TCPA did not apply. *Id.* at *7. We agreed, holding that:

> [A]ppellees' suit [was] not based on or in response to appellants' asserted communications in the county court suit, i.e., the filing of the county court suit, the serving of the county court suit on appellees, and the "winning" of a motion for sanctions in the county court suit . . . . Instead, appellees' suit [was] based on appellants' failures to act, breaches of the standard of care, conduct, and misrepresentations, virtually all of which allegedly occurred before the county court suit was filed.

*Id.* at *14 (internal citations omitted). We thus held that Eureka's breach of fiduciary duty claim was "not predicated on appellants' communications in a judicial proceeding." *Id.* at *15. We noted that although the parties "were involved in the county court suit" before Eureka filed its suit, such sequence of events did not "mean that every subsequent action after the county court suit [was filed would] result[] in litigation []based on or in response to the county court suit."

*Id.* at \*16 (citations omitted).[10]  We concluded that the Firm had not shown by a preponderance of the evidence that Eureka's claims were based on or in response to the Firm's exercise of its right to petition and thus, the trial court had properly denied its TCPA motion to dismiss.  *Id.*[11]

The Fort Worth Court of Appeals' opinion in *Newstream*, 2023 WL 5615871, also is illustrative.  Like *Cweren*, the appeal in *Newstream* stemmed from the trial court's denial of a TCPA motion to dismiss a breach of fiduciary duty claim.  *Id.* at \*1.  Newstream Roanoke 6.125, LLC was involved in a real estate dispute that resulted in litigation brought by Silk Capital Development, LLC, a non-party to the appeal.  *Id.*  Soon after the lawsuit was filed against Newstream

---

[10]  *Cf. Apache Corp. v. Apollo Expl., LLC*, No. 11-21-00295-CV, 2023 WL 3511262, at \*6 (Tex. App.—Eastland May 18, 2023, no pet.) (mem. op.) (observing "the mere sequence of a communication, followed by a lawsuit that relates in some way to the communication" is not sufficient to demonstrate that a claim is "in response to" the communication); *Chandni, Inc. v. Patel*, 623 S.W.3d 425, 435 (Tex. App.—El Paso 2019, pet. denied) ("The mere fact that judicial review of [an] issue *could* occur . . . does not automatically make it a matter related to a judicial proceeding.") (emphasis in original).

[11]  Appellees argue in their post-submission briefing that *Cweren* is inapposite because (1) the conduct of which the clients complained in that case occurred while the defendant attorneys represented the clients, not "years after any attorney-client relationship had already ended;" and (2) in deciding *Cweren*, we held "virtually all" of the professional misconduct alleged by the clients "occurred before" the lawyers sued the clients in county court, rejecting the notion that all actions that occurred after the country court suit was filed "result[ed] in litigation that [wa]s based on or in response to the county court suit." *See Cweren*, 2023 WL 2977755 at \*16.  We are not persuaded by Appellees' argument.  The timing of termination of an attorney-client relationship is not pertinent to our analysis or our holding.  And as we have explained, the conduct that forms the basis of Appellants' fiduciary duty claim arose well before the filing of the adversary proceeding.

and two other entities,[12] the minority members of a related entity[13] intervened. *Id.*

Silk settled its claims against Newstream and the other two entities and executed a Rule 11 settlement agreement, which the parties filed with the trial court. *Id.* The minority members amended their petition in intervention. They quoted from the Rule 11 agreement and asserted claims including breach of fiduciary duty against Newstream.[14] *Id.* at *2. Newstream filed a TCPA motion to dismiss the fiduciary duty claim, alleging the claim "was a legal action based on or brought in response to its right to petition." *Id.* Specifically, Newstream argued that the "settlement agreement and the Rule 11 memorialization of same, as well as the filing of the Rule 11 [a]greement into the record, [were] all protected communications because those communications were made 'in or pertaining to a judicial proceeding.'" *Id.*

---

[12]    Of the three defendants in the trial court, appellant Newstream Roanoke 6.125, LLC was the managing member of Newstream Land Partners–Roanoke LLC, and Timothy C. Nystrom allegedly owned or operated the appellant entity. *Newstream*, 2023 WL 5615871 at *1. Newstream Land Partners–Roanoke LLC and Nystrom were not parties to the appeal.

[13]    The appellees, Jonell Shore, Young Ok Kim, and Soon Boon Change, were minority members of Newstream Land Partners–Roanoke LLC. *Id.*

[14]    According to the minority members' pleadings, they sought relief

> because [Newstream] ha[d] sold the final real estate asset of the company to its affiliate, having first secured approval from the majority member [Silk] by promising a preferential distribution from the real estate sale proceeds without any provision for like kind distribution to [the minority members] or any other minority shareholders, all in exchange for [Silk's] non-suit of live claims against [Newstream].

*Id.* at *6.

27

In response to the motion to dismiss, the minority members argued that their breach of fiduciary claim was "based upon the actions of [Newstream] leading up to and prompting the memorialization of the Rule 11, not the Rule 11, per se." *Id.* The minority members argued that the Rule 11 agreement was only "the instrument memorializing the bad acts" engaged in by Newstream. *Id.* Newstream argued in its reply that the claim was "squarely based on [its] written communication filed with the Court." *Id.* at *3. Newstream further argued that the minority members' pleadings "made clear that the Rule 11 Settlement Agreement, the written terms and agreements contained therein, and the negotiations that le[d] to such agreement [were] 'essential facts' to [the minority members'] breach of fiduciary duty claims[.]" *Id.* at *6.[15]

The trial court denied the motion to dismiss, holding that "the gravamen of [the minority members'] claim for breach of fiduciary duty in th[e] case [was] premised on conduct, not on communication[s]" and "[t]he fact that there were communications involved in the events giving rise to the claim d[id] not create a sufficient nexus to the claim to invoke the TCPA." *Id.* at *3. The court of appeals concluded that the Rule 11 agreement was neither the "main ingredient" nor the "fundamental part" of the breach of fiduciary duty claim, and that the claim did not

---

[15] According to Newstream, the Rule 11 agreement was attached to and "referenced or mentioned in at least nineteen paragraphs" of the minority members' amended pleadings. *Id.* at *6.

28

arise in response to the Rule 11 agreement. *Id.* at *7 (citing *Ernst & Young, LLP v. Ryan, LLC*, No. 01-21-00603-CV, 2023 WL 4239350, at *8 (Tex. App.—Houston [1st Dist.] June 29, 2023, pet. denied) (mem. op.)). Affirming the trial court's denial of the motion to dismiss, the appellate court held:

> [The minority members'] claims are not "in response to" or in reaction to the Rule 11 agreement, but rather in response to the alleged breach of Newstream's fiduciary duties. The mere sequence of [the minority members']' claim—where it followed the Rule 11 agreement—is insufficient to establish that the breach of fiduciary duty claim is "in response to" the filing of the Rule 11 agreement. While the pleadings reference the Rule 11 agreement, the breach of fiduciary duty claim could also be stated without any reference to the Rule 11 agreement; the reference to the Rule 11 agreement in [the minority members'] pleadings merely points to the Rule 11 agreement as some evidence in support of the claim.

*Id.* (internal citations omitted).[16]

---

[16] *See also White Nile Software, Inc. v. Carrington, Coleman, Sloman & Blumenthal*, LLP, No. 05-19-00780-CV, 2020 WL 5104966 (Tex. App.—Dallas Aug. 31, 2020, pet. denied) (mem. op.) (holding claims based on firm's "failure to communicate with or act on behalf of [its former client], or its use of confidential information to its or its other clients' benefit" not subject to TCPA). In that case, White Nile sued its former law firm alleging claims of professional negligence, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and civil conspiracy in connection with the firm's representation of three of White Nile's directors in a previous lawsuit. *Id.* at *6. The firm filed a TCPA Motion to dismiss arguing that "[t]he gist of White Nile's complaint is that [the firm] 'commenced active litigation on behalf of [other clients adverse to White Nile] while purporting to represent White Nile in [a previous case].'" *Id.* The court of appeals held that White Nile's claims did not allege the firm made any communications: "[T]hese claims are based on [the firm's] failure to communicate with or act on behalf of White Nile, or its use of confidential information to its or its other clients' benefits. White Nile's claims based on [the firm's] alleged failure to communicate are not subject to the TCPA." *Id.* Although *White Nile* was decided under the previous version of the TCPA, we find its analysis to be persuasive.

29

As in *Cweren* and *Newstream*, the conduct the Dernicks complain about and which forms the basis of their claims is not the filing of the adversary proceeding or communications made during the proceeding, but Appellees' undertaking of Encore as a client adverse to the Dernicks, their alleged failure to disclose their adverse representation, their failure to obtain consent for such adverse representation, and their purported misuse of the Dernicks' confidential information. They allege that Appellees breached their fiduciary duties by "engaging in conflicts of interest, placing personal interests and the interests of Encore and other clients over the interests of the Dernicks, improperly using the Dernicks' confidences and confidential information, taking advantage of the Dernicks' trust, engaging in self-dealing, and making representations." While the Dernicks also allege that Appellees ultimately filed an adversary proceeding against the Dernicks and breached their duty in doing so, this allegation does not convert the Dernicks' claims into claims based on the commencement of such judiciary proceedings implicating the right to petition. As the Dernicks explain, their breach of fiduciary duty claim could be stated without any reference to the adversary proceedings, as it was the undertaking of Encore's representation adverse to the Dernicks that is at the crux of their legal action. That their suit was filed after the adversary proceeding is merely a chronological fact, which does not establish that the Dernicks' legal action is "based on" or "in response to" such

30

proceeding or any communications made during the proceeding. *See Apache Corp. v. Apollo Expl., LLC*, No. 11-21-00295-CV, 2023 WL 3511262, at *6 (Tex. App.—Eastland May 18, 2023, no pet.) (mem. op.) (observing "the mere sequence of a communication, followed by a lawsuit that relates in some way to the communication" is not sufficient to demonstrate that a claim is "in response to" the communication).

In their post-submission briefing, Appellees rely on two cases for the proposition "that the TCPA applies to breach of fiduciary duty claims asserted by a *former* client against its *former* lawyers, for precisely the same sort of conduct and communications alleged here, which occurred *after* a previous attorney-client relationship had ended." (Emphasis in original.) Both cases are inapposite.

*Brenner v. Centurion Logistics LLC on Behalf of Centurion Pecos Terminal LLC*, No. 05-20-00308-CV, 2020 WL 7332847 (Tex. App.—Dallas Dec. 14, 2020, pet. denied) (mem. op.) involved a breach of fiduciary duty claim brought by Centurion Logistics LLC against its former lawyer, Jules S. Brenner, and his law firm. Centurion was formed by three individuals who sought to develop a railway terminal in the Pecos, Texas area. *Id.* at *1. Brenner and his firm represented Centurion beginning in 2014. *Id.* Centurion and another company, Ballengee, formed Centurion Pecos Terminal LLC ("CPT"). *Id.* Brenner and his firm did the legal work for the formation of CPT and later revised the company agreement. *Id.*

31

Centurion's founders and Ballengee's owner eventually became embroiled in a dispute. *Id.* at *1–2. In 2016, Centurion sued several entities in an effort "to stop any further damage to Centurion[.]" *Id.* at 2. Centurion's claims in the suit were dismissed, the counterclaims were settled, and the suit was disposed of in 2019. *Id.* at *3. Several months later, Centurion sued Brenner and his firm alleging they breached fiduciary duties owed both before and after the first Centurion suit commenced. *Id.* at *2. With respect to the breach of fiduciary duty claims pertaining to conduct or communications made during its first suit, Centurion alleged (1) the attorneys worked "in the background" on a lawsuit for Centurion's opponents; (2) Brenner's firm "falsely represented" that he was not involved in the Centurion lawsuit and would not work on it, even though billing records indicate he worked on the suit; (3) Brenner and his firm drafted a document that, among other things, allowed for the dismissal of certain claims in the Centurion suit; and (4) Brenner disclosed to Centurion's opponents confidential information that was "very detrimental" to Centurion in the suit. *Id.* at *6. The trial court denied the TCPA motion to dismiss filed by Brenner and his firm. *Id.* at *3. The court of appeals reversed in part, concluding that in all four instances, the claims were based on "appellants' communications pertaining to a judicial proceeding." *Id.* at *6.[17] However, the court held that three other alleged fiduciary breaches "with no

_____

[17] Centurion urged "global reasons" the TCPA should not preclude its claims.

obvious connection" to the first Centurion suit were not subject to dismissal under the TCPA. *Id.* at *7.[18]

*Brenner* is distinguishable. There was no allegation in that case that the appellants had breached their fiduciary duty by failing to obtain consent to represent clients adverse to Centurion, or that confidential information was disclosed apart from a judicial proceeding. In this case, Appellees' alleged failure to obtain consent for their adverse representation of Encore and their alleged misuse of confidential information is the crux of the Dernicks' legal action, not the adversary proceeding that later ensued. They allege that "without consultation or consent," Foley undertook representation of Encore adverse to the Dernicks, "refused" to "withdraw from the conflicting representation," used the Dernicks' confidential information, took "advantage of the Dernicks' trust," "engaged in self-dealing," and "sued [the Dernicks] on behalf of [its] other client, arising from the

---

*Brenner v. Centurion Logistics LLC on Behalf of Centurion Pecos Terminal LLC*, No. 05-20-00308-CV, 2020 WL 7332847, at *7 (Tex. App.—Dallas Dec. 14, 2020, pet. denied) (mem. op.). Centurion argued the TCPA does not apply to a client's fiduciary breach claim against its own client, and that application of the TCPA to its claims violates the Open Courts Clause in the Texas Constitution. *Id.* at *8. The appellate court rejected both arguments. *Id.* However, it agreed that the TCPA was inapplicable to claims concerning the provision of legal services to Centurion's adversaries "in the run-up to the Underlying Lawsuit." *Id.*

[18] The court of appeals stated, "The bare fact that the Underlying Lawsuit was pending" while the appellants were allegedly assisting with an acquisition involving an entity belonging to a Centurion founder "does not demonstrate that any communications involved in the [acquisition] were 'in or pertaining to' the Underlying Lawsuit or any other judicial proceeding." *Id.* at *7.

33

same minority shareholder dispute [in which Foley represented the Dernicks]." While the Dernicks also allege that Appellees made representations and asserted "bogus" claims against them in the adversary proceeding based on allegations they "knew to be false," unlike the appellees in *Brenner*, the Dernicks' fiduciary duty claim is not in response to the judicial proceeding, but rather in response to the alleged breach of Foley's fiduciary duties, which the Dernicks allege began prior to the filing of the adversary proceeding. As the court stated in *Brenner*, "[A]ppellants' communications before the [first Centurion suit] existed were not exercises of the right to petition under § 27.001(4)(A)(i)." *Id.* at *7. The court further stated, "To be an exercise of the right to petition under § 27.001(4)(A)(i), a communication must be in or pertain to an actual, existing judicial proceeding. A pre-litigation communication doesn't fit that definition, even if it provokes the subsequent litigation." *Id.* (internal citations omitted).[19]

---

[19] To the extent Appellees contend that the Dernicks' claims also stem from communications made during the adversary proceedings, we note that Appellees made no to attempt to separate in their motion, or on appeal, the allegations made by the Dernicks concerning the judicial proceeding from those involving other matters. They merely argued that "all of the conduct and statements" about which the Dernicks complain were made in connection with the judicial proceeding, and thus their right to petition was implicated. "If a legal action is in response to both protected and unprotected activity under the TCPA, the claim is subject to dismissal only to the extent that it is in response to the protected conduct." *Union Pac. R.R. Co. v. Chenier*, 649 S.W.3d 440, 448 (Tex. App.—Houston [1st Dist.] 2022, pet. denied). But as we explained in *Chenier*, "[i]t is not the court's role to segregate the wheat from the chaff." *Id.* It is the movant's "responsibility to segregate the protected conduct from the unprotected; if it cannot, then its motion to dismiss should be denied." *Id.* (citations omitted). Because Appellees made no

The second case Appellees cite for support, *Jetall Cos., Inc. v. Hoover Slovacek LLP*, No. 14-20-00691-CV, 2022 WL 906218 (Tex. App.—Houston [14th Dist.] Mar. 29, 2022, pet. denied) (mem. op.), is equally distinguishable. The suit stemmed from the Hoover Slovacek law firm's representation of Jetall's president and owner, Ali Choudhri, in a deed restriction lawsuit. *Id.* at *1. The firm terminated its representation of Choudhri after six months, withdrew from the case, and did not represent Choudhri again. *Id.* Six years later, Jetall sought to purchase part of a title company owned in part by Renee Davy. *Id.* The firm represented Davy when negotiations began and sent Davy and Jetall a waiver of conflict letter. *Id.* Jetall and Davy signed the waiver, consenting to the firm's

attempt to "segregate the protected conduct from the unprotected," they failed to meet their burden under the TCPA. *See W. Mktg., Inc. v. AEG Petroleum, LLC*, 616 S.W.3d 903, 911 (Tex. App.—Amarillo 2021) ("[I]t is the defendant's responsibility to segregate the protected conduct from the unprotected; if it cannot, then its motion to dismiss should be denied."), *modified on other grounds on reh'g*, No. 07-20-00093-CV, 2021 WL 1152904 (Tex. App.—Amarillo Mar. 18, 2021, pet. denied) (mem. op.); *Weller v. MonoCoque Diversified Interests, LLC*, No. 03-19-00127-CV, 2020 WL 3582885, at *4 (Tex. App.—Austin July 1, 2020, no pet.) (mem. op.) ("Because MDI's counterclaims might at best be viewed as being based on a mix of protected and unprotected activity and because the pleadings, evidence, and parties' argument provide no way to parse out which particular counterclaim is based on protected rather than unprotected conduct and to what degree, the trial court did not err in denying appellants' [TCPA] motion"); *Navidea Biopharm., Inc. v. Capital Royalty Partners II*, No. 14-18-00740-CV, 2020 WL 5087826, at *4 (Tex. App.—Houston [14th Dist.] Aug. 28, 2020, pet. denied) (mem. op.) (holding in the absence of a showing "a practicable way to parse out" protected from unprotected communications, the TCPA does not apply, observing, "when [the TCPA] movant does not provide guidance as to how to determine which claims are in response to protected rather than unprotected conduct, and the courts are unable to identify a means to accomplish the task, our sister courts have concluded the trial court does not err by denying the motion").

35

representation of Davy with respect to the title company negotiations. *Id.* Later, at Jetall's request, the firm ended its representation of Davy in the title company negotiations, and Davy never sold her interest in the company to Jetall. *Id.*

Eight months later, Jetall sued Davy, among others, claiming she had agreed to sell her ownership in the title company to Jetall but breached the agreement and in doing so, committed fraud. *Id.* at *2. Hoover Slovacek represented Davy in the title company suit. *Id.* In a subsequent suit, Jetall sued Hoover Slovacek asserting claims for breach of contract and breach of fiduciary duty. *Id.* Jetall alleged that the conflict waiver it had earlier signed included a provision reserving Jetall's right to request that Hoover Slovacek withdraw from representing Davy. *Id.* Jetall claimed it had invoked that right and, even though the firm acknowledged it would withdraw, it instead continued to represent Davy, breaching the contract and violating its fiduciary duties to Jetall. *Id.*

The law firm filed a TCPA motion to dismiss Choudhri's claims arguing in part that Jetall's claims were "based on or in response to the exercise of Hoover Slovacek's right to petition[.]" *Id.* Jetall responded that the TCPA was inapplicable because the claims were not based on any specific communication. *Id.* Jetall argued that the attorney-client relationship giving rise to its fiduciary duty had begun in 2010 during the deed restriction lawsuit, at which time the firm received confidential information regarding Choudhri's businesses, including

36

Jetall. *Id.* at *3. Jetall alleged the firm had breached its fiduciary duty by representing Davy in the title company suit. *Id.* Hoover Slovacek argued that the TCPA precluded the claim because it was asserted "in response to Hoover Slovacek's legal services rendered to Davy during the course and scope" of the title company suit. *Id.* The firm argued the representation was an exercise of its right to petition and the court of appeals agreed. *Id.*

*Jetall* is distinguishable because the allegations there were based on representations made during the title company suit itself, rather than the failure to advise a former client of a conflict in representation. Indeed, the firm attached evidence to its TCPA motion reflecting communications made pertaining to the title company suit, such as an affidavit describing "multiple conferences and discussions with Davy and various witnesses" and "multiple communications with all counsel of record in the case" and the filing of "various pleadings, answers, and motions" and participation in a hearing. *Id.* Jetall did not dispute that the identified communications had occurred. *Id.* And Jetall did not, as the Dernicks allege here, contend that the alleged breach of fiduciary duty had occurred prior to the firm's representation of Davy in the title company suit. The court held, "Because the communications occurred during the [] Title [Company] Suit, which was 'an actual, pending judicial proceeding,' they constitute an exercise of the right of petition." *Id.* at *4 (internal citation omitted).

37

In contrast, the Dernicks' claims are not based on or in response to the adversary proceeding. Rather, their claims are based on Appellees' failure to disclose the adverse representation prior to the filing of the adversary proceeding and the alleged misuse of information that occurred independent of the adversary proceeding. Thus, neither *Brennan* nor *Jetall* is persuasive.

We sustain the Dernicks' first issue.[20]

## Attorneys' Fees and Costs

In their second issue, the Dernicks argue that because they demonstrated Appellees' TCPA motion "was frivolous or brought solely to delay these proceedings," the trial court abused its discretion in not awarding them reasonable attorneys' fees and costs. They argue the motion was "premised on nothing but conclusory recitations of the statutes and summations of the Dernicks' pleadings" and was "intended to delay these proceedings, increase costs of litigation, and use a

---

[20] In light of our disposition, we need not address whether the Dernicks established a prima face case for each element of their claims, whether Appellees' established their affirmative defenses, or whether the commercial speech exemption applies. *See Wayne Dolcefino & Dolcefino Comm'ns, LLC v. Cypress Creek EMS*, 540 S.W.3d 194, 202 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (observing because TCPA did not apply, appellate court need not address arguments regarding prima facie proof of elements of non-movant's claims, commercial speech exemption, or movant's defense to declaratory judgment act claims at issue); *see also Newstream Hotels & Resorts, LLC v. Abdou*, No. 02-21-00343-CV, 2022 WL 1496537, at *4 (Tex. App.—Fort Worth May 12, 2022, pet. denied) (mem. op.) ("Because Appellants did not establish that the TCPA applied to Appellees' amended claims, the burden never shifted to Appellees to establish by clear and specific evidence a prima facie case for each essential element of their claims, and the trial court properly denied the TCPA motion.").

dismissal mechanism not otherwise available to them." They request that we remand to the trial court "for it to decide whether the TCPA motion was frivolous or solely intended to delay and make the appropriate award of attorney's fees." Appellees respond that the Dernicks have "no conceivable right" to recover attorneys' fees under the TCPA.

A nonmovant may recover reasonable attorneys' fees and court costs under the TCPA if the trial court determines the TCPA motion to dismiss was "frivolous or solely intended to delay." TEX. CIV. PRAC. & REM. CODE § 27.009(b); *Jones v. Pierce*, No. 01-23-00187-CV, 2023 WL 7778583, at *5 (Tex. App.—Houston [1st Dist.] Nov. 16, 2023, no pet.) (mem. op.). Given the trial court's disposition in favor of Appellees, the court did not have the opportunity to determine whether Appellees' motion to dismiss was frivolous or solely intended to delay. We thus remand to enable the trial court to make such a determination. *See Noble Anesthesia Partners, PLLC v. U.S. Anesthesia Partners, Inc.*, No. 05-18-00768-CV, 2019 WL 3212137, at *4 (Tex. App.—Dallas July 9, 2019, pet. denied) (mem. op.) (noting after reversing trial court's grant of TCPA motion to dismiss that "[t]he results obtained by the parties have changed as a result of our opinion; thus,

the issue of whether the motions to dismiss were frivolous or solely intended to delay must be remanded to the trial court for its consideration").[21]

In light of our disposition, we remand the case to the trial court to determine whether the Dernicks are entitled to attorneys' fees and costs under Section 27.009(b). We sustain the Dernicks' second issue.[22]

## Conclusion

We reverse the trial court's order granting Appellees' TCPA motion, dismissing Appellants' claims, and awarding attorneys' fees to Appellees and remand this cause to the trial court for further proceedings consistent with this opinion.


Veronica Rivas-Molloy
Justice


Panel consists of Justices Hightower, Rivas-Molloy, and Farris.

---

[21] The award of attorneys' fees under Section 27.009(b) is "entirely discretionary." *Keane Frac, LP v. SP Silica Sales, LLC*, 608 S.W.3d 416, 432 (Tex. App.—Houston [1st Dist.] 2020, no pet.)). "The mere fact that the trial court denied the TCPA motion, without more, is not sufficient to demonstrate that the motion was frivolous." *Jones v. Pierce*, No. 01-23-00187-CV, 2023 WL 7778583, at *6 (Tex. App.—Houston [1st Dist.] Nov. 16, 2023, no pet.) (mem. op.) (citing *Keane*, 608 S.W.3d at 433).

[22] *See Borgelt v. Austin Firefighters Ass'n, IAFF Loc. 975*, No. 22-1149, ___ S.W.3d ___, 2024 WL 3210046, at *15 (Tex. June 28, 2024) (noting that because trial court erred in granting TCPA motion, awards of fees must also be reversed).